Leota SNOWBARGER, Guardian of Marie
Brown, Claimant, Respondent,

v.

M. F. A. CENTRAL CO-OPERATIVE,
Employer, Appellant,

and

M. F. A. Mutual Insurance Company,
Insurer, Appellant.

No. 22973.

Kansas City Court of Appeals.

Missouri.

Oct. 5, 1959.

Howard F. Major, James A. McGee, Columbia, for appellants.

L. F. Cottey, Lancaster, Clare Magee, Unionville, for respondent.

SPERRY, Commissioner.

This is a claim for benefits under the Workmen's Compensation Law. Section 287.010 et seq. RSMo 1949, V.A.M.S.

Clarence Brown, an employee of M. F. A. Central Co-operative, died as the result of injuries received in an automobile accident while traveling to see a doctor for treatment of a prior injury growing out of his employment. Leota Snowbarger, guardian of Marie Brown, who is the widow of deceased, instituted this claim for her ward.

At a hearing before a referee an award was made in favor of claimant but, upon

appeal to the whole Commission, the action of the referee was reversed. Claimant then appealed to the Circuit Court. The award was disapproved and the cause was remanded to the Commission with directions to enter an award in favor of claimant. This appeal followed.

Clarence Brown was an employee of defendant. On February 7, 1956, he suffered a compensable injury to his back. He was directed to report to Dr. Davidson, defendants "store" doctor, for treatment. On February 10th, while working on the premises, he complained to defendants' acting manager of his back and said that Dr. Davidson was not doing him "a damn bit of good", that if he were at Hedrick, Iowa, his family doctor would "fix him up." The acting manager, answered: "if you think that guy can fix you up, all right * * * go on up there." Employee then asked if the store could get along without him that afternoon and the manager said "Yeah, go on down and get Charley Jackson to relieve you and go on up there." Brown was paid for all of February 10th.

On cross examination the acting manager testified, in part, as follows:

"A. Well, I come back from dinner, * * *. Clarence Brown, he talked about his back. Said he didn't think Dr. Davidson was doing him a damn bit of good and if he was up to Hedrick to his doctor he thought he could fix him up.

"Q. Now, what reply did you say you made to him? A. I said, if you think he can do you any good, why go on up there, and he said 'can you get along without me here?' and I said, "Sure, go on down and tell Charley Jackson to come up and relieve you and go ahead; go on up there.'

*     *     *     *     *     *

"Q. I said at the time that you made this statement to Mr. Brown you were not assuming to take him out from underneath the care of Dr.

Davidson, were you? A. Well, if he wasn't doing him any good I suppose he should have been.

"Q. You weren't assuming to direct him to go to Hedrick, Iowa, for medical attention, were you? A. Well, why wouldn't I be?

"Q. I am just asking you. A. I was.

"Q. You * * * were assuming to send this man a matter of 60 or 50 miles away from Lancaster to a doctor? A. I am assuming that if the man's back was still hurting him and if the doctor could help him I told him to go ahead and go to his own doctor.

*     *     *     *     *     *

"Q. Isn't it a fact now, Mr. Hird, the man simply asked you—suggested going up there—and you just said— well if you want to go— A. No, that's not right.

*     *     *     *     *     *

"Q. Are you telling this Commission that you directed the man to go up there. A. I did.

"Q. You ordered him to go up there? A. He asked me if—I said 'if you think he can do it go ahead.'

"Q. Well, isn't it a fact— A. Isn't that an order?

"Q. I am asking you? A. Well, I answered you.

*     *     *     *     *     *

"A. I told him to go. If he thought he could do him any good to go on up there. That's all I told him.

"Q. Well I say— A. I wasn't assuming anything."

From the whole record the Commission found the facts to be that employee Brown met his death as a result of an automobile accident which occurred while he was en route to Hedrick, Iowa, to receive medical

treatment for his back, which had previously been injured during the course of his employment; that he was making the trip with the knowledge and permission of the employer; and that his automobile accident and resulting death, as a matter of law, did not arise out of and in the course of his employment. It based the latter conclusion on Larson's Workmen's Comp. Law, Sec. 13.13, and Farmers' Gin Co. v. Cooper, 147 Okl. 29, 294 P. 108.

The first question presented is whether or not the Commission could reasonably have found, from the evidence, that the trip to Iowa was made with the "knowledge and permission" of defendant, and not upon its order or direction, as claimant contends. The Commission is the trier of the facts. It had the right to weigh the evidence, to make its findings of fact therefrom, and to draw whatever reasonable inferences from said facts that it saw fit to draw. It could have believed, from all of the testimony of the acting manager and the surrounding circumstances, that he merely consented and approved of decedents' trip; and it could have disbelieved the acting manager's "after" explanation as to his interpretation of the meaning of the language he used in discussing the trip with deceased. We are bound by that finding.

Since there is evidence of record from which the Commission could and did find that defendant merely knew of and consented to the trip, it is not proper to discuss what our decision should or might be if the evidence had established, as a positive fact, that defendant ordered and directed deceased to make the trip.

Thus, the issue is simple: Is an employee, who has been injured in the course of his employment and who has been treated by the employer's physician for that injury, entitled to compensation for a second injury received while en route to his own doctor for treatment, with the knowledge and consent of his employer? Note

that this issue does not encompass a situation where an employee is so injured because of a weakness traceable to the first injury.

Neither party cites Missouri authority on the issue presented. Claimant cites and relies on Fitzgibbons v. Clarke, 205 Minn. 235, 285 N.W. 528. There, an employee had suffered a compensable injury to her hand and had been *directed* by her employer to seek medical treatments *from a certain doctor*. While returning to her employment, after having had a treatment, she fell and suffered a broken shoulder. In sustaining the award the Court stated that medical treatment was mutually beneficial to both parties and made necessary by the previous compensable injury; but the facts are not as in the case at bar.

Goldberg v. Marcy Corp., 276 N.Y. 313, 12 N.E.2d 311, was cited by the Court as supporting the Fitzgibbons decision. It is also relied on by claimant here. In that case it was held that, because *a weakness caused by the first injury directly contributed to cause the second*, the latter was compensable. It is not authority for the theory upon which the holding in the Fitzgibbons case is based, nor does it support claimants' contention here. It will be further discussed herein.

The next authority cited by the Minnesota Court is Corbett v. Nash Eng. Co., 8 Comm. W.C.D. 285. We do not have access to that report.

The last case cited by the Court is that of Huhn v. Gehnrich, etc., 250 N.Y. 568, 166 N.E. 327, where recovery was allowed for an injury received by an employee when he fell on ice while returning to his place of employment from a visit to the doctor for treatment of a previous compensable injury. The above are all of the facts stated in the opinion. However, in the later case of Goldberg v. Marcy Corp., supra, the New York Court sustained an award for an injury received when an employee fell while she was proceeding to

a doctor's office, at the *direction* of her employer, for treatment of a previous compensable injury. The Court based its ruling on the grounds that there was evidence that the fall was occasioned by a *weakness caused by the previous injury*. The Court strongly indicated that, but for the fact that the fall was caused by a weakness brought about by the previous injury, the award would not have been sustained. We, therefore, conclude that the Goldberg case should not be considered as authority in support of the broad proposition that one who is injured while going to see a doctor for treatment of a prior compensable injury is entitled to compensation.

Claimant also relies on Governair Corporation v. District Court, Okl., 293 P.2d 918. There, an employee was injured en route to a doctor's office for emergency treatment after having received a compensable injury at his place of employment. He was placed in employer's truck by the foreman, while employee was in a semi-conscious condition, and the truck was operated by the foreman. The Court distinguished that case from its earlier decision in Farmers' Gin Co. v. Cooper, 147 Okl. 29, 294 P. 108, saying that where the employee was injured while traveling in employer's conveyance, furnished under express or implied agreement as an incident to employment, an injury so received was compensable. The case is not similar, on the facts, to the case at bar, where deceased was injured while driving his own vehicle to voluntarily visit his own doctor, three days after the injury occurred.

The Oklahoma Court, in Farmers' Gin Co. v. Cooper, 147 Okl. 29, 294 P. 108, 109, denied compensation in a case similar to ours. There an employee, suffering from a compensable injury, received *permission* from his employer to go to another town to consult a doctor and, while traveling in his own car and receiving pay, he was injured in a collision. The Court held that an injury, to be compensable, must arise "out of" *and* "in the course of" the employment; that the accident did not arise out of, nor was there causal connection with, claimant's employment.

Claimant cites John v. Fairmont Creamery Co., 268 App.Div. 840, 50 N.Y.S.2d 253, as authority for the proposition that decedent's accidental death was a sequence of his prior accident resulting in compensable injuries. In that case the employee was returning from the company doctor's office after having received treatments for his compensable injury. No doubt he was required to make the trip upon the company doctor's instructions and, if he had failed or refused to do so, he might have jeopardized his rights to compensation.

In the case at bar, deceased was making the trip because of his own free decision to do so, and if he had not chosen to make it his rights to compensation would have been in no way affected. It is not in point.

Claimant cites Beem v. H. D. Lee Merc. Co., 337 Mo. 114, 85 S.W.2d 441, 100 A.L.R. 1044, as supporting the proposition that injuries received due to hazards of the streets, while in the course of employment, are compensable. That is the law. But in that case decedent received his injuries while en route to his home and headquarters, after having spent the day at another town in his master's service. The Commission found that the accident arose from and grew out of the employment, and the Court sustained the award. That is not this case.

Claimant urges that an injury suffered by an employee while performing an act for the mutual benefit of himself and his employer is compensable, even though the advantage to the employer is slight. Such has been declared to be the law. 58 Am. Jur. 744, Sec. 239; Wamhoff v. Wagner Elec. Corp., 354 Mo. 711, 190 S.W.2d 915, 919, 161 A.L.R. 1454. In the Wamhoff case the Commission found for claimant and made an award for injuries received during employment hours, while at his place of employment, and while performing an

act approved by the employer, which act was an *incident* of the employment. Here, the Commission found that decedent merely had permission to do what he was doing when injured on the highway by reason of a cause not connected with his working conditions; and the benefit to the employer is of questionable value in view of the fact that employer's own doctor was treating the employee. There is no evidence tending to prove that employer expected to pay the Iowa doctor for his services. The acting manager merely said to Brown: "If you think he can do you any good, why go on up there, * * *," leaving to Brown the choice to go or not to go to his own doctor, whose name the acting manager said that he did not know.

Defendant cites Skelgas v. Industrial Commission, 400 Ill. 322, 79 N.E.2d 501, as authority for its contention of non-compensability. There employee had suffered a previous compensable injury and was killed while on his way traveling home from the company doctor's office where he had gone pursuant to company instructions. But the Court held that decedent was not an employee at the time he received his injuries. It is of but little value in determining the issues here presented.

Defendant cites Mack v. M. & S. Maintenance Co., 4 N.J.Super. 251, 66 A.2d 734. An employee fell on ice and broke his leg en route home from the company doctor's office where he had been treated for a prior compensable injury. It was held that, since weakness due to the injury first received in no wise contributed to cause the accident from which the second injury stemmed, compensation could not be allowed; that the second injury resulted from causes independent of the first injury.

This opinion is rather lengthy due to the fact that the issue is one without court precedent in our state. Able counsel on either side have been diligent presenting authorities, and fairness requires that these be carefully considered.

From a reading of the cases cited we are constrained to agree with Larson's Workmen's Comp.Law, supra (cited in the majority opinion of the Commission), to the effect that to allow compensation in this case, on its facts, would be "to go somewhat further than would be expected under the ordinary legal concept of direct and natural result, and, in fact, come very close to applying the but-for theory of consequences." Certainly no Missouri case has gone so far as we are urged to go, and we are cited to no such holding by the courts of sister states in cases involving facts such as the Commission found here. We are unwilling to be the first to thus extend coverage, even though we recognize our duty to liberally construe the law so as to include all who may logically come under its benevolent provisions.

The judgment should be reversed and the cause remanded with directions to reinstate the award of the Commission.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court. Because of the importance of the question involved, this case is by the court transferred to the Supreme Court. Section 10, Art. V, Const.1945, V.A.M.S.

CAVE and HUNTER, JJ., concur.

BROADDUS, J., dissents.