James LINDQUIST,
Employee-Respondent,

v.

CONTAINER CORPORATION OF AMERICA, and Travelers Insurance Company, Employers-Appellants.

No. 36983.

Missouri Court of Appeals,
St. Louis District,
Division Two.

May 25, 1976.

Edward M. Vokoun, Evans & Dixon, St. Louis, for employers-appellants.

Larry W. Glenn, Mogab, Hughes & Green, St. Louis, for employee-respondent.

STEWART, Judge.

This is an appeal by Container Corporation of America, the employer, and Travelers Insurance Company, the insurer, in a workmen's compensation proceeding from a

judgment of the Circuit Court of St. Louis County which affirmed the final award of the Labor and Industrial Relations Commission of Missouri [1] (hereafter called Commission) in favor of James Lindquist, the employee. We affirm.

The word "employer" when used in this opinion will refer to both the employer and the insurer.

The principal question presented upon this appeal is whether there was sufficient and competent evidence to warrant a finding by the Commission that the employee suffered an accident by reason of an unusual or abnormal strain. Employer does not question the nature and extent of the injury.

■ In our review of this case we cannot substitute our judgment for that of the Commission. The evidence and all reasonable inferences to be drawn therefrom is to be reviewed in the light most favorable to the Commission's award to determine if it is supported by competent and substantial evidence. *Davies v. Carter Carburetor*, 429 S.W.2d 738 (Mo.1968); *Snowbarger v. M. F. A. Central Co-op*, 349 S.W.2d 224 (Mo.1961). With these principles in mind we review the facts.

Employee was employed in the shipping and receiving department of employer. At the time he was injured, he was working in a boxcar loading boxes stacked on a skid or pallet which was sitting on a metal plate which bridged the gap between the loading dock and the boxcar. Each box was approximately eighteen inches long by twelve inches wide and eight or nine inches high and weighed about sixty pounds. The boxes were stacked five high, three rows deep. There were approximately forty boxes on the pallet. Because the pallet covered most of the bridge plate, in order to lift the outermost row, it was necessary for him to reach across the two inner rows. There were no handles on these boxes. They were lifted by placing one hand under the box and by placing the other hand on top of the box. The employee was moving the boxes one tier at a time. Up to the time he was injured he had moved alongside the skid with the boxes. At the time he was injured he had finished unloading most of the third tier and was unloading the back row. He was standing at the right hand corner of the skid, he was working rapidly and without thinking reached diagonally across the skid to the far left hand corner. He was "leaning over as far as [he] could bend over." As he lifted the box he turned or twisted the wrong way and "something went in his back." The employee variously described his position at the time as "awkward"; "I stretched too much." He was using "strength and force and muscle." In the course of the hearing the employee demonstrated to the referee the position that he was in at the time the injury occurred.

It is now settled that "where an employee's injury is the result of an unusual or abnormal strain arising out of and in the course of his employment the injury is compensable. An abnormal strain may, therefore, be classified as an accident even though not preceded or accompanied by a slip or fall." *Crow v. Missouri Implement Tractor Co.*, 307 S.W.2d 401, 405 (Mo. banc 1957); *Merriman v. Gutman Truck Service*, 392 S.W.2d 292, 297[10] (Mo.1965).

■ It was part of the employee's regular duties to lift boxes like those with which he was working at the time he was injured. The usual method of unloading these boxes was for the employee to move along the skid so that he would be directly in front of the box to be unloaded. The Commission was warranted in finding that, on this occasion, he placed himself in an awkward position; that in reaching diagonally across the skid to reach the box he would have had to flex his trunk, keep his knees straight and extend his arms completely; that he lifted hurriedly; and that this constituted an accident by unexpected or unusual strain.

Employer contests the findings of fact upon the ground that the employee's testimony at the hearing was so contradictory to

1. One of the Commissioners dissented.

prehearing statements made by employee as to be self-destructive. The primary basis for this contention is a thirty-three page statement in question and answer form obtained from employee by a representative of the Travelers Insurance Company. This statement was taken about three months after the injury at the office of Container Corporation in the presence of its personnel manager.

We have reviewed this statement and find as employee said of it, that "it is basically correct," and that it is not so contradictory of employee's testimony as to be self-destructive.

■ The employer directs us to a portion of the statement which he contends is contradictory to the testimony respecting employee's position with respect to the box he was lifting.

"Q. Would this have been on the bottom layer or were you at the second layer?

A. I'd say the second layer.

Q. About the second layer. And were they stacked right next to you; were you standing right next to it?

A. I was standing in front of it."

The questions and answers are not clear and unequivocal. "It" could refer to a box or the skid upon which "they" [the boxes] were stacked. The credibility of the testimony, the inferences to be drawn from it and the weight to be given it upon the whole record was for the referee and the Commission. *Shepard v. Robinson*, 451 S.W.2d 329, 335[5–6] (Mo.1970). We cannot say that this portion of the statement read in the light most favorable to the finding of the Commission was destructive of employee's testimony.

Much the same can be said for another portion of a statement singled out by employer. Although employee had not previously been asked about how he bent over to pick up the box, the following occurred near the end of the statement:

"Q. Now, you said you were bent over at the waist or at the knees or how?

A. Well, you know, I was just bent over.

Q. At the knees and at the waist?

A. Right."

The affirmative answers to the leading questions put to employee cannot be said to be so contradictory to his testimony as to be self-destructive. The testimony at the hearing was re-enforced by a demonstration of the manner in which employee bent which undoubtedly led the referee to the conclusion that "the employee in bending over to reach the particular box described above would have had to flex his trunk, keep his knees straight and extend his arms completely, notwithstanding an alleged contrary statement in Employer and Insurer's Exhibit 1, page 28."

We have also reviewed the history as taken by the employer's physicians who examined and treated employee which read as follows:

"Pt. was lifting a large plate & hurt his back. He states he did not slip or fall . . . ."

"At that time, he was loading pieces of metal on a platform. He estimates the pieces to weigh 60 or 70 pounds. As he turned lifting one of these, he felt a pop in the mid-portion of the low back . . ."

The physicians did not attempt to take a detailed factual statement. The doctors obtained sufficient information to permit intelligent examination and treatment. The facts contained in the history were accurate as far as they went. *Davies v. Carter Carburetor*, 429 S.W.2d 738 (Mo. 1968). We find no contradiction.

Employer recognizes the problem confronting him in this proceeding when he argues that plaintiff's statement "is contradictory, if not directly at least by implication, to his in-court testimony."

We may not at this stage of the proceeding draw inferences which would be unfavorable to the prevailing parties. Any purported contradictions could affect employee's credibility but that was a matter to be considered by the Commission which re-

solved that issue in favor of employee. *Davies v. Carter Carburetor, supra,* at 752 [18].

Employer misreads *Duncan v. A. P. Green Refractories Co.,* 522 S.W.2d 639 (Mo. App.1975). In that case this court did make a finding contrary to that of the Commission but not, as employer asserts, contrary to the finding of the referee. In that case employee made several direct unequivocal statements to persons and in written claims under health and accident policies that his injury was not connected with his employment.

Employer also urges that employee did not avail himself of the "opportunity to volunteer physical facts absolutely material to proof of a compensable unusual strain" during the time the question and answer statement was taken; and that this failure "is tantamount to an admission of the non-existence of those facts." It has been held that "failure to assert a fact, when it would have been natural to assert it, amounts in effect to an assertion of the non-existence of the fact." *Wigham v. Ben Franklin Div. of City Products Corp.,* 459 S.W.2d 32, 39 (Mo.App.1970).

A careful review of the statement reveals that it was obvious that employer's representative was fully aware of the factual elements necessary to defeat employee's claim. Most of the questions asked of employee concerning the facts surrounding his injury were leading questions which employee was admonished to answer either "yes" or "no". This occurred on three occasions early in the statement. At the conclusion of the statement employee was asked if he had any additional information that would help in the determination of the claim. It is evident that these questions did not direct employee to specifics of the cause of injury. Employee understood them as references to the nature and extent of his injury.[2] When his statement was taken employee was not asked to demonstrate his position at the time he received his injury. Such a demonstration may have revealed, as it did to the referee, that the position assumed by employee would of necessity require an abnormal strain to lift the box. The atmosphere under which the statement was taken was not conducive to full and voluntary discussion on the part of employee.

We have reviewed the cases principally relied upon by employer. For the most part they are cases in which the appellate courts have deferred to the finding of the Commission that the employee had not sustained an abnormal strain.[3]

We find that there was sufficient competent evidence to support the finding that employee sustained an accident within the meaning of the Act by unexpected or unusual strain.

The judgment of the circuit court affirming the award of the Commission is affirmed.

CLEMENS, P. J., and DOWD, J., concurs.

2. "Q. Do you have any additional information that might help in the determination of this claim?

A. Well, I don't know about that Macon deal—

Q. Who referred you to the Macon Medical Center?

A. Well, I told Bill yesterday, I don't know, the procedure here is to send you to Macon but I don't know what they do for you. When I was back on that second shift my back was hurting so bad that everybody was stopping and asking me what was wrong with my knee . . ."

.   .   .   .   .

"Q. Do you have any additional information that might help us in the determination of this claim?

A. That's the only thing I can think of; when I started back it seemed like it was getting worse and—

Q. Progressively getting worse?

A. Right; I mean I had the easiest job, you know in shipping, but it just kept getting it aggravated."

3. *Ginter v. Freund Baking Co.,* 388 S.W.2d 505 (Mo.App.1965); *Herring v. Safeway Stores, Inc.,* 499 S.W.2d 538 (Mo.App.1973).